# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>ONEJET, INC.,<br><br>　　　　　　　　　Debtor. | Bankr. Case No. 18-24070-GLT<br><br>Chapter 7 |
| ROSEMARY C. CRAWFORD, Chapter 7 Trustee,<br><br>　　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>BOUSTEAD SECURITIES, LLC; MELVIN PIRCHESKY; EAGLE VENTURES, INC.; and ROBERT CAMPBELL,<br><br>　　　　　　　　　Defendants. | Adv. Pro. No. _____ |

## COMPLAINT

Rosemary C. Crawford (the "Trustee" or "Plaintiff"), in her capacity as chapter 7 trustee of the Estate of OneJet, Inc. (the "Debtor" or "OneJet"), by and through the undersigned counsel, files this complaint (the "Complaint") against Boustead Securities, LLC, Melvin Pirchesky, Eagle Ventures, Inc. and Robert Campbell (collectively, the "Defendants"). In support of this Complaint, Plaintiff hereby alleges as follows:

### INTRODUCTION

1.　　This is an action to recover intentional and constructive fraudulent transfers and damages arising from the collapse of OneJet, an indirect air carrier that sold public charter passenger flights in regional air markets from April 2015 through August 2018. The Defendants received excessive, unreasonable, and above-market commission payments in return for marketing and selling investments in OneJet, at a time when OneJet was hopelessly insolvent. Indeed, Defendants were paid excessive commissions *because* they implicitly agreed to ignore numerous

1

red flags regarding OneJet's operations and financial viability. Defendants failed to conduct reasonable and customary diligence of OneJet or its offerings, and were in turn handsomely and excessively rewarded. The Trustee brings this action to recover the commissions paid to Defendants, as well as for damages to OneJet resulting from Defendants' actions in furtherance of the fraudulent conduct of OneJet's insiders.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157(a) and 1334(b) because the claims asserted herein arise in or are related to the instant chapter 7 case, *In re One Jet, Inc.*, pending in United States Bankruptcy Court for the Western District of Pennsylvania (the "Court") at Case Number 18-24070-GLT (the "Case"); 28 U.S.C. § 1331 because this litigation arises under the laws of the United States; 28 U.S.C. § 1367(a) and pursuant to principles of supplemental, pendent and ancillary jurisdiction.

3. This Court has personal jurisdiction over each of the Defendants pursuant to Federal Rule of Bankruptcy Procedure 7004(f) and other applicable law.

4. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408, 1409, 1391(a)(2), 1391(a)(3) and 1391(b)(2)-(3). This adversary proceeding is a "core" proceeding to be heard and determined by this court pursuant to 11 U.S.C. § 157(b)(2).

5. The Trustee consents to the jurisdiction of the bankruptcy court and the entry of final orders or judgment by the bankruptcy judge.

## THE PARTIES

### A. The Plaintiff

6. On October 17, 2018 (the "Petition Date"), certain creditors (the "Petitioning Creditors") filed an involuntary Petition for relief under Chapter 7 of Title 11 of the Bankruptcy

Code against the Debtor in the United States Bankruptcy Court for the Western District of Pennsylvania (the "Court") at Case Number 18-24070-GLT (the "Case").

7. On November 13, 2018, the Court entered an order for relief [Case Doc. No. 28], granting the Petition against the Debtor.

8. On November 13, 2018, the Trustee was appointed to administer the estate of the Debtor. The Trustee is the duly appointed, qualified and acting trustee in the within proceedings, with authority and standing to commence this action and prosecute all causes of action asserted herein.

9. On or about February 27, 2019, the Court entered an Order authorizing the Employment of Kirk B. Burkley and Bernstein-Burkley, P.C., as Special Counsel to the Trustee ("Special Counsel") [Case Doc No. 134].

**B. The Defendants**

10. Defendant Boustead Securities, LLC ("Boustead"), is a California limited liability company with a principal place of business at 6 Venture, Suite 325, Irvine, California 92618. Boustead is an investment banking firm that specializes in raising debt and equity capital for privately-held companies and is registered with the Financial Industry Regulatory Authority ("FINRA").

11. Defendant Melvin Pirchesky ("Pirchesky") is an adult individual with an address of 400 South Highland Avenue, Apartment 3, Pittsburgh, Pennsylvania 15206.

12. At all times relevant, Pirchesky was a registered agent of Boustead.

13. Eagle Ventures, Inc. ("Eagle Ventures") is a Pennsylvania Corporation with an address of 425 N. Craig Street, Pittsburgh, Pennsylvania 15213. At all relevant times, Pirchesky was the President of Eagle Ventures, and conducted business in the name of Eagle Ventures.

14. Defendant Robert Campbell ("Campbell") is an adult individual with offices at 6 Venture, Suite 325, Irvine, California 92618.

15. At all times relevant, Campbell was a registered agent of Boustead.

## FACTUAL BACKGROUND

### A. ONEJET BEGINS FLIGHT OPERATIONS WITH STARTUP CAPITAL FROM THE MAGUIRE FAMILY

16. OneJet promoted itself as providing non-stop flights to primarily business travelers from underserved regional airports. With Matthew Maguire as Chief Executive Officer ("Maguire"), OneJet began flight operations in April 2015.

17. OneJet began its flight operations with startup capital from Maguire's parents, Patrick Maguire ("Pat Maguire") and Jean Reike ("Reike") (Maguire, Pat Maguire and Reike are collectively, the "Maguire Family"), using funds from their private company Maguire/ Maguire, Inc. ("Maguire/ Maguire")

18. During the first year and a half of its operations, from April 2015 to December 2016, OneJet's operating revenue never came close to covering its expenses. In 2015, OneJet generated approximately $938,000 in revenues with expenses of $8.4 million, netting a loss in excess of $7.4 million for the year. In the same year, OneJet's liabilities exceeded its assets by more than $2.9 million. In 2016, OneJet had approximately $2.1 million in revenues against expenses of $13 million, yielding a loss of $10.9 million. OneJet's liabilities exceeded its assets by more than $3.3 million by the end of 2016.

19. OneJet's bank accounts were consistently overdrawn and credit card balances and vendors were not timely paid. In response, the Maguire Family caused Maguire/Maguire to provide operating capital to OneJet in amounts varying from $2,000 to $202,000, which was just enough to keep OneJet operational.

20. The Maguire Family privately acknowledged during this time period that OneJet was "done," and in the process of "winding down" or "declaring bankruptcy immediately."

21. Pat Maguire and Jean Reike were themselves on the verge of bankruptcy and "cashing in our retirement funds," and Maguire/ Maguire was also nearly bankrupt as a result of the money invested into OneJet.

### B. ONEJET SOLICITS NEW INVESTMENT MONEY WITH THE ASSISTANCE OF DEFENDANTS

22. As the prospect of repaying his parents became more and more grim, Maguire set OneJet on a campaign to raise new investment monies with desperation in early 2017. Indeed, as of 2017, OneJet remained in business for the sole or primary purpose of soliciting new investor funds in order to pay back the Maguire Family.

23. To that end, there existed a clear agreement and understanding within the Maguire Family that OneJet would transfer monies to Maguire/Maguire as soon as OneJet received sufficient funds from new investors.

24. In January 2017, Maguire was introduced to Defendants Pirchesky and Campbell. Pirchesky and Campbell, acting as agents of Boustead, represented to Maguire that they could help OneJet raise new investor money by marketing and selling OneJet investments to private equity investors.

25. Pirchesky held himself out as having significant connections to investors in the Pittsburgh region, which was OneJet's hub and base of operations. Campbell claimed to have special knowledge of the aviation industry.

26. Pirchesky advised Maguire that Boustead conducts diligence on any private placement before accepting an engagement, consistent with FINRA regulations which require a reasonable investigation of the issuer of securities. Pirchesky stated that OneJet would need to

5

submit to the investigation by Boustead, including by providing current Profit and Loss Statements, financial statements and tax returns for all prior years, board minutes, lists of shareholders, all loan Agreements, employment contracts and summaries of insurance coverage.

27. As explained by FINRA, reasonable diligence of a private placement includes "meaningful, independent research on material aspects of the offering," as well as investigation of "red flags identified during the reasonable diligence process." *See* FINRA 2018 Exam Findings Report, available at https://www.finra.org/rules-guidance/guidance/reports/2018-report-exam-findings/reasonable-diligence-private-placements .

28. OneJet did not have the bare minimum documentation required to conduct reasonable diligence of its proposed offerings. In fact, OneJet had nothing more than Maguire's purported "estimates" of financial performance. According to Maguire:

> We had estimates, and, again, we never said that we had audited, reviewed financials or anything else, but we had estimates of financial performance and status of the—of the company…. When I say estimates, it was an attempt to take fairly disorganized information and, you know, apply some general industry metrics, I guess or structure to how typically you would display that. And, again, I say typically. I had never run a company before. I'd certainly never run an airline before.

29. Defendants were undoubtedly aware of the serious deficiencies in OneJet's documentation when Pirchesky asked for board minutes and Maguire responded "what are those?"

30. Maguire's reaction to Boustead's typical diligence caused Pirchesky to send an email in the middle of the night offering to "go back to Boustead's CEO" to "reduce his diligence requirements."

31. Maguire, predictably, seized on the offer of "reduced diligence."

32. As a result, Defendants performed minimal investigation into the details of OneJet's offerings, and no meaningful diligence. Had Defendants performed even the minimum

diligence, they would have determined that OneJet's financial information was not based on actual financial data but rather on "estimates" by Maguire. Had Defendants looked to OneJet's actual financial data, they would have determined that OneJet was not financially viable and was being artificially prolonged with the sole or primary intent of paying back the Maguire Family with new investor money.

33. Upon Defendants' agreement to perform minimal diligence, OneJet promised to pay commissions that were excessive, unreasonable and above-market, consisting of ten (10) percent of the gross proceeds of the funds raised by Defendants for OneJet (the "Commissions").

34. In February 2017, Defendants commenced what would become a 13-month relationship with OneJet.

35. During this time, Defendants marketed and sold OneJet stock in the amount of $6,400,000, receiving $623,521.18 in Commissions.

36. OneJet's "Series B" stock offering promised investors accrued dividends at an eight percent (8%) annual rate, with an ultimate return on investment of anywhere between 4% and 18%. Upon information and belief, Series B purchasers were also promised "VIP" treatment in the way of heavily discounted or free flights for themselves and their family members.

37. Defendants also marketed and sold debt instruments styled as "Term Note and Charter Agreements" ("Charter Notes"), receiving $247,000.00 in commission payments from OneJet.

38. The Charter Notes were typically issued in increments of $150,000, to be repaid by OneJet with ten percent annual interest after a term of three years. Investors who purchased Charter Notes became members of what was referred to as the "Charter Program" or "Naples

Club," guaranteeing use of OneJet aircraft for certain charter and scheduled flights at heavily discounted prices for themselves and family members.

39. All investment funds procured by Boustead were deposited by the investor into an escrow account. The escrow agent would thereafter pay the Commissions off-the-top to Boustead.

40. Boustead would then pay a percentage portion to Pirchesky and Campbell.

41. Upon information and belief, Eagle Ventures also received a portion of the Commissions either directly or by virtue of being the alter ego of Pirchesky. The Trustee is informed and believes that there is a unity of interest and ownership between Pirchesky and Eagle Ventures such that any individuality and separateness has ceased to exist.

42. During the two-year period prior to the Petition Date, OneJet caused numerous payments of Commissions to the Defendants (the "Transfers"). Defendants were paid a total of $871,021.18 in Commissions for marketing and selling $8,875,000.00 in OneJet investments to a number of private investors. The details of such Transfers are attached hereto and incorporated herein as **Exhibit A**.

### C. ONEJET'S PAYMENT OF COMMISSIONS WAS EXCESSIVE IN LIGHT OF THE SERVICES PERFORMED BY DEFENDANTS

43. At all relevant times, OneJet had nowhere near the revenues needed to sustain the debt and equity commitments marketed and sold by the Defendants, a fact which the Defendants ignored while they reaped excessive commissions. Indeed, the excessive commissions paid by OneJet to the Defendants effectively deterred the Defendants from investigating or taking other appropriate actions as the details of OneJet's financial distress became evident to all.

44. Defendant Pirchesky was the primary driver of OneJet's investments during this time period, and was the point of contact between Defendants and Maguire. Pirchesky's communications with Maguire reflect a relationship in which Pirchesky avoided confrontation

with Maguire at all costs, even as complaints to Pirchesky from investors of missed interest payments and cancelled flights became more frequent.

45. On the occasions that Pirchesky would request updated financial documents for OneJet, Maguire provided financial documents that would not have held up to even minimal scrutiny and were, in fact, not scrutinized to any degree by Pirchesky or the other Defendants.

46. Notably, during this time period, Pirchesky's emails to OneJet investors were identified as coming from his company, Eagle Ventures. Moreover, to this day, the website for Eagle Ventures identifies OneJet as a company for whom it performed services by soliciting investments and raising equity. Accordingly, upon information and belief, Eagle Ventures also played a role in soliciting investment for OneJet and benefitted from the excessive Commissions.

47. For their share of the Commissions, Campbell and Boustead performed very little, if any, services for OneJet.

48. Campbell had exceptionally limited contact with potential investors. Campbell only sporadically communicated with Maguire or anyone at OneJet. Campbell's involvement was for appearances only, based on his purported aviation expertise, and provided no value to OneJet.

49. Similarly, Boustead provided only limited support to Pirchesky. Boustead did not supervise Pirchesky, as required, nor did it conduct reasonable diligence of OneJet at any point during its 13-month engagement.

50. Boustead did not retain a third-party due diligence consultant until after the collapse of OneJet and its exposure became evident.

51. In or around June of 2018, OneJet began defaulting on nearly all of its financial obligations to vendors, suppliers, and others. In or about August of 2018, OneJet ceased operations

altogether. From the inception of OneJet to the end of operations, OneJet was insolvent and never operated as a financially viable company.

## COUNT I

### Against All Defendants to Avoid Intentional Fraudulent Transfers by OneJet- 11 U.S.C. § 544(b) and § 548(a)(1)(B), Cal. Civ. Code §§ 3439.04(a)(1), 3439.07 and 12 Pa. C.S.A. § 5101 *et seq*

52. The Trustee incorporates all preceding paragraphs by reference as if fully set forth herein.

53. As set forth above, the Maguire Family, with the assistance of the Defendants, was engaged in a form of Ponzi scheme wherein OneJet's operations were artificially prolonged so that OneJet could raise new money from outside investors in order to repay the Maguire Family and Maguire/ Maguire.

54. At the time of each Transfer, OneJet was insolvent, undercapitalized, and unable to pay its debts as they came due.

55. The Transfers were not made in good faith and each of the Transfers was made while OneJet was being operated as or with the characteristics of a fraudulent Ponzi scheme

56. To maintain the illusion that OneJet was viable so as to entice investors, the Maguire Family, with the assistance of Defendants, caused OneJet to incur obligations that it could not fulfill or pay, including free or reduced-price flights, promised returns on investments and dividends, and guaranteed interest payments.

57. In furtherance of this fraudulent scheme, OneJet paid excessive, unreasonable and above market Commissions to the Defendants within two years before the Petition Date.

58. Each Transfer by Maguire was in breach of his fiduciary duty to OneJet and constituted an intentional transfer by OneJet with the actual intent to hinder, delay or defraud one or more creditors of OneJet.

59. One or more creditors exist who hold general unsecured claims that are allowable under Section 502 of the Bankruptcy Code and would be entitled to avoid each of the Transfers under both California's Uniform Voidable Transactions Act or former Uniform Fraudulent Transfer Act, and Pennsylvania's Uniform Voidable Transactions Act or former Uniform Fraudulent Transfer Act. For example, Boomtown CIO has a claim in the amount of $30,066.03 for debts incurred before the Fraudulent Transfers were made. Moreover, the United States of America is also owed debts that would entitle it to avoid the Fraudulent Transfers.

60. Accordingly, the Trustee is entitled to avoid and set aside the Transfers.

WHEREFORE, the Trustee prays that this Honorable Court enter an order and judgment against Defendants avoiding and setting aside the Transfers in the amount of $871,021.18, and awarding the Trustee attorney's fees and costs, and such other relief as this Honorable Court may deem proper and just

## COUNT II

**Against All Defendants to Avoid Constructively Fraudulent Transfers by OneJet- 11 U.S.C. § 544(b) and § 548(a)(1)(B), Cal. Civ. Code §§ 3439.04(a)(2) and 12 Pa. C.S.A. § 5101** *et seq*

61. The Trustee incorporates all preceding paragraphs by reference as if fully set forth herein.

62. At all relevant times, OneJet was (a) insolvent, (b) had unreasonably small capital and unreasonably small assets in relation to the business and transactions in which it was engaged, and (c) intended to incur, or believed or should have believed that it would incur debts beyond its ability to pay as the debts became due.

63. OneJet did not receive reasonably equivalent value in exchange for the Transfers to Defendants. As set forth above, the Maguire family was engaged in a Ponzi-like scheme that artificially prolonged the existence of OneJet, exacerbated its indebtedness and increased its insolvency. OneJet paid Commissions that were above market and not reasonable in relation to the services provided by Defendants, which furthered the fraudulent scheme by ignoring red flags and performing no real diligence.

64. Defendants did not receive the Commissions in good faith, but rather because they implicitly agreed to turn a blind-eye to the irregularities in OneJet's financial documents and information.

65. The Fraudulent Transfers were incurred, granted and/or made by the Debtor within two years preceding the Petition Date.

66. One or more creditors exist who hold general unsecured claims that are allowable under Section 502 of the Bankruptcy Code and would be entitled to avoid each of the Transfers. For example, Boomtown CIO has a claim in the amount of $30,066.03 for debts incurred before the Transfers were made. Moreover, the United States of America is also owed debts that would entitle it to avoid the Transfers.

230. Accordingly, the Trustee is entitled to avoid and set aside the Transfers.

WHEREFORE, the Trustee prays that this Honorable Court enter an order and judgment against Defendants avoiding and setting aside the Transfers in the amount of $871,021.18, and awarding the Trustee attorney's fees and costs, and such other relief as this Honorable Court may deem proper and just.

## COUNT III

### Against All Defendants for Recovery of Avoidable Transfers by the Trustee- 11 U.S.C. § 550

67. The Trustee incorporates all preceding paragraphs by reference as if fully set forth herein.

68. The Trustee is entitled to avoid each of the Transfers described in this Complaint and set forth on Exhibit A.

69. Each of the Transferees was the initial transferee or the immediate or mediate transferee of one or more of the Transfers, or the person or entity for whose benefit one or more of the Transfers was made.

WHEREFORE, the Trustee prays that this Honorable Court enter an order and judgment against the Transferees directing each Transferee to return to the Trustee the Transfers, or their value, received by each Transferee in the amounts set forth in this Complaint or to be determined at trial, as the case may be, and awarding the Trustee attorney's fees and costs, and such other relief as this Honorable Court may deem proper and just.

## COUNT IV

### Unjust Enrichment

70. The Trustee incorporates all preceding paragraphs by reference as if fully set forth herein.

71. The Defendants were paid excessive commissions by OneJet so that Defendants would ignore or fail to investigate the actions of Maguire and the Maguire Family, who were engaged in a Ponzi-like scheme to artificially prolong the operations of OneJet in order to entice new investors for the sole purpose of repaying the Maguire Family.

72. The Defendants were paid excessive Commissions by OneJet as an incentive to reduce their typical diligence, which allowed Maguire to conceal OneJet's true and accurate financial information and business records.

73. The Defendants provided minimal, if any, value to OneJet through their services, which saddled OneJet with obligations and debts that it could never hope to fulfill, while artificially prolonging OneJet's operations.

WHEREFORE, the Plaintiff prays that this Honorable Court enter judgment against Defendants for restitution of monies unjustly received and retained, in an amount to be determined at trial, and such other relief as this Honorable Court may deem proper and just.

## COUNT V

### Aiding and Abetting Fraud

74. The Trustee incorporates all preceding paragraphs by reference as if fully set forth herein.

75. As set forth above, the Maguire Family, with the assistance of the Defendants, was engaged in a form of Ponzi scheme wherein OneJet's operations were artificially prolonged so that OneJet could raise new money from outside investors in order to repay the Maguire Family and Maguire/ Maguire.

76. Defendants knew or should have known of, or were willfully blind to, the Maguire Family's fraudulent scheme.

77. Despite this knowledge, Defendants engaged in conduct that aided and provided substantial assistance in connection with, and knowingly participated in, the Maguire Family's fraudulent scheme.

78. The Defendants were paid excessive Commissions by OneJet as an incentive to turn a blind eye to and participate in the Maguire Family's fraudulent scheme.

79. The Defendants prepared investment summaries for OneJet that were false and concealed the true financial condition of OneJet.

80. The Defendants knew or should have known that the investment summaries for OneJet contained materially false information.

81. Furthermore, the Defendants failed to take any appropriate remedial action once it became known that the OneJet investment summaries contained materially false information.

82. Instead, the Defendants substantially aided the Maguire Family's fraudulent scheme as set forth herein.

83. As a result, Defendants are liable as aiders and abettors. The tortious acts or omissions of Defendants as aiders and abettors directly and proximately caused harm to OneJet, OneJet's property and the bankruptcy estate in an amount to be determined at trial.

WHEREFORE, the Plaintiff prays that this Honorable Court enter judgment against Defendants for aiding and abetting fraud, in an amount to be determined at trial, and such other relief as this Honorable Court may deem proper and just.

### COUNT VI

### Civil Conspiracy

84. The Trustee incorporates all preceding paragraphs by reference as if fully set forth herein.

85. The Defendants and the Maguire Family formed a malicious combination for the purpose of enriching themselves at the expense of OneJet, OneJet's creditors and the bankruptcy estate without lawful authority to do so.

86. As described more particularly above, the Defendants and the Maguire Family acted in concert to facilitate, *inter alia*, (i) the operation of OneJet as a fraudulent Ponzi scheme in order to raise additional funds from outside investors for the purpose of artificially prolonging OneJet's life and returning monies to Maguire/Maguire, (ii) the fraudulent transfer of OneJet's assets to the Defendants as excessive commission payments, and (iii) the defrauding of OneJet's innocent shareholders.

87. The acts of the Defendants as conspirators directly and proximately caused harm to OneJet, OneJet's property and the bankruptcy estate in an amount to be determined at trial.

WHEREFORE, the Plaintiff prays that this Honorable Court enter judgment against Defendants for civil conspiracy, in an amount to be determined at trial, and such other relief as this Honorable Court may deem proper and just.

Dated: October 16, 2020                                    Respectfully submitted,

                                                           BERNSTEIN-BURKLEY, P.C.

                                                           By: */s/ Kerri Coriston Sturm*
                                                           Kirk B. Burkley, Esq.
                                                           PA I.D.: 89511
                                                           Kerri Coriston Sturm
                                                           PA I.D.: 89838
                                                           John J. Richardson, Esq.
                                                           PA I.D.: 86045
                                                           707 Grant Street
                                                           Suite 2200, Gulf Tower
                                                           Pittsburgh, PA 15219
                                                           Phone: (412) 456-8167
                                                           Fax:    (412) 456-8135
                                                           Email: ksturm@bernsteinlaw.com
                                                           *Special Counsel to the Trustee*